IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **RITA PATE,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No.: 4:14-CV-2197-VEH** |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION

### INTRODUCTION

Plaintiff Rita Pate brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. She seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied her application for Disability Insurance Benefits ("DIB"). Pate timely pursued and exhausted her administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g). For the following reasons, the court **AFFIRMS** the commissioner's decision.

### STATEMENT OF THE CASE

Pate was 38 years old at the time of her hearing before the Administrative Law Judge ("ALJ"). (*Compare* tr. 134 *with* tr. 39). She has completed the 12th grade. (Tr. 28).

Her past work experience includes employment as a chemist, pharmacy technician, and insurance agent. (Tr. 28, 57, 138. 143. 151–54). She claims she became disabled on July 30, 2010, due to neck problems, back problems/injuries/arthritis, left knee arthritis, and neck, back and knee problems/injuries/arthritis. (Tr. 20, 137). Her last period of work ended on July 29, 2010. (Tr. 137).

On October 13, 2010, Pate protectively filed a Title II application for a period of disability and DIB. (Tr. 20). On March 4, 2011, the Commissioner initially denied these claims. *Id.* Pate timely filed a written request for a hearing on April 14, 2011. *Id.* The ALJ conducted a hearing on the matter on August 29, 2012. *Id.* On October 18, 2012, she issued her opinion concluding Pate was disabled between July 30, 2010 and May 18, 2012, that Pate was no longer disabled, and denying her benefits. (Tr. 29, 32). She timely petitioned the Appeals Council to review the decision on December 14, 2012. (Tr. 12). On September 8, 2014, the Appeals Council issued a denial of review on his/her claim. (Tr. 1).

Pate filed a Complaint with this court on November 12, 2014, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on March 9, 2015. (Doc. 5). Pate filed a supporting brief (doc. 9) on April 30, 2015, and the Commissioner responded with her own (doc. 10) on May 29, 2015. Pate replied on June 2, 2015. (Doc. 11).

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions de novo because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" that "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)   whether the claimant's impairment meets or equals an impairment listed by the Commissioner;

(4)   whether the claimant can perform his or her past work; and

> (5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id.*

## ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2014.

2. She had not engaged in substantial gainful activity since July 30, 2010, the alleged disability onset date.

3. From July 30, 2010 through May 17, 2012, the period during which the claimant was under a disability, she had the following severe impairments:

   degenerative disc disease; degenerative joint diseases; lumbar facet arthropathy; deep vein thrombosis; obesity; and sinusitis.

4. From July 30, 2010 through May 17, 2012, she did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. From July 30, 2010 through May 17, 2012, the claimant had the residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) except she can lift five pounds occasionally and less than five pounds frequently; during an eight-hour day he can sit two hours, and stand/walk 2 hours; can never climb ladders, ropes or scaffolding; can occasionally climb ramps and stairs; can occasionally balance, stoop, crouch, kneel and crawl; can frequently reach; should avoid prolonged or repetitive rotation, flexion or hyperextension of the neck; avoid all exposure to workplace hazards such as dangerous machinery and unprotected heights; no commercial driving; and is able to maintain attention and concentration for 2-hour periods at a time in order to complete an eight-hour workday.

6. From July 30, 2010 through May 17, 2012, she was unable to perform any past relevant work.

7.  The claimant was a younger individual age 18-44, on the established disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above.

10. From July 30, 2010 through May 17, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was under a disability, as defined by the Social Security Act, from July 30, 2010 through May 17, 2012.

12. The claimant has not developed any new impairment or impairments since May 18, 2012, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from July 30, 2010 through May 17, 2012.

13. Beginning May 18, 2012, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix

1(20 CFR 404.1594(1)(2)).

14. Medical improvement occurred as of May 18, 2012, the date the claimant's disability ended (20 CFR 404.1594(b)(l)).

15. The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 404.1594(b)(4)(I)).

16. After careful consideration of the entire record, the undersigned finds that, beginning May 18, 2012, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can lift 10 pounds occasionally and less than 10 pounds frequently; during an eight-hour day she can sit six hours, and stand/walk 2 hours; can never climb ladders, ropes or scaffolding; can occasionally climb ramps and stairs; can occasionally balance, stoop, crouch, kneel and crawl; can frequently reach; avoid prolonged or repetitive rotation, flexion or hyperextension of the neck; avoid all exposure to workplace hazards such as dangerous machinery and unprotected heights; no commercial driving; and she can maintain attention and concentration for 2-hour periods at a time in order to complete an eight-hour workday.

17. The claimant is still unable to perform past relevant work (20 CFR

404.1565).

18. The claimant's age category has not changed since May 18, 2012.

19. The claimant's education level has not changed.

20. Beginning May 18, 2012, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

21. Beginning May 18, 2012, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

22. The claimant's disability ended May 18, 2012.

(Tr. 23–32).

## DISCUSSION

The court may only reverse a finding of the Commissioner if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d

835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Pate urges this court to reverse the Commissioner's decision to deny her benefits on two grounds: First, "The ALJ substituted her opinion for the opinion of Dr. Tippets, Claimant's longstanding treating physician by holding that the issue of disability is a determination that is reserved to the commissioner of Social Security." Doc. 9 at 14. Second, the ALJ failed to properly analyze the opinion in accordance with the factors found at 20 C.F.R. § 404.1527. (Doc. 9 at 22). Pate is correct that these are errors (the first is a particularly egregious error of law), but they are harmless. See 28 U.S.C. § 2111; *Mills v. Astrue*, 226 F. App'x. 926, 931 (11th Cir. 2007) ("[W]hen an incorrect application of the regulations results in harmless error because the correct application would not contradict the ALJ's ultimate findings, the ALJ's decision will stand."); *accord Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *cf. Prevatte v. French*, 547 F.3d 1300, 1305 (11th Cir. 2008) (district court may raise harmlessness of error *sua sponte* in habeas review).

Despite the styling of Pate's first argument as an objection to a truism in the world of Social Security appeals—that determination of disability is reserved to the Commissioner—it is more accurately stated as a complaint that the ALJ completely

disregarded the physician's opinion because, the ALJ says, the issue of disability is reserved to the Commissioner. If that is the real fuss here, Pate is right: the ALJ cannot do that. The reservation of the issue of disability to the Commissioner simply means that the ALJ is not <u>required</u> to give <u>controlling</u> weight to a physician's opinion that a claimant is disabled. *See Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Here, the ALJ decided to give little weight to Dr. Tippets's opinion—even though the ALJ believed the medical evidence supported the opinion, tr. 27—because the issue of disability was reserved to the Commissioner and because "there are additional vocational factors" that apply to the disability analysis. (*Id.*). That there are "additional vocational factors" goes to the reason that the issue of disability is reserved to the Commissioner, not the validity of a medical opinion. The ALJ's position was, in essence: "I don't have to give weight to this opinion, and there are good reasons I don't have to, so I won't." This is, as I said, egregious error. *See, e.g.*, *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005); *Ryan v. Heckler*, 762 F.2d 939, 942 (11th Cir. 1985).

But it is harmless, only offending the sensibilities of those versed in this area of law, rather than causing real injury. *Cf. Shineski v. Sanders*, 556 U.S. 396, 408–09 (2009) (harmless error doctrine preserves judicial resources by preventing reversal for error when error had no effect on judgment); *Hein v. Freedom from Religion Foundation, Inc.*, 551 U.S. 587, 619–20 (2007) (Scalia, J., concurring) (no injury in the

face of a "generalized grievance that the law is being violated"). That is because the ALJ determined that Pate <u>was disabled at the time Dr. Tippets issued his opinion</u> on September 15, 2011. Pate's complaint is that the ALJ disagreed that she <u>remained disabled</u> after May 17, 2012—more than eight months later. If Dr. Tippets's letter has continued application after May 17, it is Pate's task to explain why. *Shineski*, 556 U.S. at 410 ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."). Absent such an explanation, the error is harmless.[1]

The foregoing applies with equal force to Pate's second argument, as it would to any argument about the ALJ's consideration of the September 15, 2011 opinion. The decision will be **AFFIRMED**.

---

[1] It is worth noting that the Eleventh Circuit rarely concludes that the ALJ's failure to adequately explain her reasons for discrediting (or ignoring) a physician's opinion is harmless. *See*, *e.g.*, *Mills v. Astrue*, 226 F. App'x., 931–32 (11th Cir. 2007); *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x. 589, 591 (11th Cir. 2006). *But see Laurey v. Comm'r. of Soc. Sec.*, No. 14-14509, 2015 WL 7729455 (11th Cir. Dec. 1, 2015). But there also does not appear to have been a case before, like here, where the ALJ improperly disregarded the doctor's opinion but then made a disability determination consistent with that opinion. In this case, if I were to unflinchingly follow the rule in *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004), that "[a] court cannot excuse the denial of a mandatory procedural protection simply because, ... there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely," then the harmless error doctrine would be meaningless.

**DONE** and **ORDERED** this the 18th day of March, 2016.

*/s/ Virginia Emerson Hopkins*

**VIRGINIA EMERSON HOPKINS**
United States District Judge